The issue in this case is whether the district court abuses discretion in imposing an absolute ban on dating individuals that have children. We have an abuse of discretion first amendment challenge. Correct, your honor. We've been talking about that. And that's what I'm hoping to be the dam and the tide from the western district that we've talked about. I was fortunate enough to be able to be the trial attorney in this case as well. So I was the one that lodged the objection at the supervised release revocation hearing. In that objection, I noted that it was a blanket prohibition and an association right violation. And in fact, I went further and used by way of contrast a more narrowly tailored condition that was going to be imposed that we weren't objecting to. Which was having contact with minors without requesting a probation officer's permission. If this had the probation outlet, would you be standing here today? I think I would still be standing here today, your honor, because of the following. Which is that it is not reasonably related and because of the importance of freedom association. This court as recently as Duke, last month in this case, talked about that when the courts are looking at association restrictions, you look carefully to the liberty interest and as it's juxtaposed to the government's interest in protection of the public. Which would be the only arguable section of 3553 that relates to this. This condition, correct me if I've got the wrong case, because I could have. We have a series of these. This condition was a part of his original supervised release conditions. That's correct, your honor. And he didn't object to that at the time. That's correct. And under the guidelines now, it's pretty standard to reimpose the same conditions that were part of the original supervised release conditions. So is there a problem here with saying, well, you didn't object to that condition before and you're objecting to it now. I mean, are we reexamining something that you should have raised before or why do you get another bite at this apple? And your honor, I researched before I submitted this brief and in fact before I went to the district court about the existence of any possible prohibitions. I couldn't find any, and I hate to assume anything, but my assumption is that because when you step in front of a court at a final revocation hearing, the court then has an opportunity to impose a sentence in terms of amount of time in prison or not, as well as conditions of supervised release. It's why I actually, in this hearing, this final revocation hearing, acknowledged to the court, I assume the court is going to impose the same conditions it imposed before. And if that is correct, I lodged the objection to, and I identified by number and paragraph each of these objections. So the short answer is, your honor, I could find no authority that prohibited the objection to a term of supervised release condition that's being imposed at a final revocation hearing. I simply found no law that prohibited that. And again, I think it goes back to the fact that district courts and those settings are free to take out conditions, add conditions, etc. It's an entirely new sentencing hearing as far as it relates to the revocation terms. And so back to Duke, Duke really provided a roadmap for this case in considering the case law in this court. It talked about Ellis. Ellis is a case where the court actually upheld a ban on dating, but that supervision term had the, with the permission of a probation officer, it allowed it. In other words, it was not a blanket prohibition. It was conditional. And it goes further in Ellis, factually, in Ellis, you have an individual that this court found had previously sexually assaulted four minors, and that two of which were his nephews, and that he had used those close relationships to be able to prey on the minors. Absolutely distinct from Caraveo. Caraveo's only sex conviction is the child pornography that Judge King, you mentioned earlier, that he was originally sentenced on in, I believe, 2006 in the district court. He had no, no contact offenses in his history, nor does he until this day. He has, there's nothing in the record that indicate that he used relationships to, to gain proximity to minors to then be able to abuse them. The Duke case also talks about Esler. Esler is another case where a dating ban was upheld, but that also was, had a conditional language of law and probation officer. What are the other circuits positions on, on these types of broad bans? Well, I know that in Duke, the court mentioned that, that no other circuit, and nor was it going to be a circuit that upheld unconditional lifetime bans. Now I will, I will acknowledge that in this case, it is not lifetime. So in terms of the factors that Duke did discuss, which was scope and duration, the duration in Mr. Caraveo's case is eight years. It's not a lifetime ban, but it is in terms of scope and absolute blanket prohibition that's unconditional from dating anyone with children. Could you address whether or not your First Amendment claim is, is preserved as we've, as you said, but what about the, the, your challenge based upon 3583 D1 and D2? Are those preserved or do we split the thing between, and one's plain error and one's preserved? Well, as I, as I put it in the reply, Your Honor, I believe that it's preserved because I specifically noted that it was a blanket prohibition. That language of blanket prohibition has been used by the court in Duke, used by the court in the Wood case, and used by the court in Paul. Uh, in each one of those cases, as recently as Duke, the court itself has used the term blanket prohibition, and that is the term used. Secondly, I then went about, after explaining the blanket prohibition, and said that there were more narrowly tailored conditions that were to be imposed in this case. And I gave the example of, of one, which was the condition that prohibited association with minors without a prior approval of probation. And as this court's noted in some of these other hearings today, the government was standing there in that, in courtroom and had ample opportunity to object, respond, reply, submit evidence, argue evidence as to why my objection in terms of the blanket prohibition, as it related to the other condition of release that I, uh, provided as an anecdote, and to distinguish, uh, and to the association. And they provided no response, Your Honor. And so I think then if you look also in Duke, Duke talks about the Rodriguez case. Uh, and again, to distinguish it from Caraveo's case, you have in Rodriguez an individual who had sexually assaulted his girlfriend's daughter. Again, specific facts that related reasonable relationship to this defendant's characteristics and conduct in the crime that were found by the court in Rodriguez, and again, absent in Caraveo. There is no evidence in this record, nor could there be, that Mr. Caraveo had ever been involved in contact defense on minors, using relationships to be able to gain access to minors for sexual misconduct. None of that exists, Your Honor. And I think, lastly, to address, uh, one of the government's arguments, and we started to hear it earlier today again, about the fact that district courts always retain the modified conditions. Um, and so therefore, that, that could be something the court could do in the future and that alleviates the harm here. Will Duke answer that question? Absolutely. In Duke, this court explained that future modifications have nothing to do with abuse of discretion, errors in imposing the conditions today. And so unless the court has other questions, I'll reserve for rebuttal. Yes. You've saved time for rebuttal. Thank you, Your Honor. Thank you, Mr. Hancher. Ms. Lockwood? If it please the court, um, I'd, I'd like to address some of the issues that have just been raised, and it, it's true that in Ellis, uh, which is a published opinion, the condition that was upheld about not dating anyone with children under 18 was, uh, that there was a, uh, the ability of the probation officer to give permission. Uh, the same thing is true in Esler. Um, here, the district court retained the power to modify that condition. So the district court did not delegate. I don't know that, that a condition is any different if the probation officer is given the power to modify it or if the district court retains it. It seems that the district court, in cases where they would like to do it, can and, and should retain the power to decide whether to modify those conditions. What did Duke say about that? I'm sorry, Your Honor? What did Duke say about that? Well, I think Duke expresses a different point of view. And, and really what I'm saying is that, that in this particular case, maybe those, uh, things in Duke don't apply when you look at it from the district court's perspective. If the district court wishes to retain that power and not entrust it to the probation officer, then he, the court always retains that, uh, ability to modify. But the reason, but isn't that a difficulty? Because that means that you have to file a motion and get a hearing rather, whereas the probation safety valve, um, you, you, you have regular contact with your probation officer and so you can double check and verify because you don't want to run afoul. That's a much more cumbersome process to every time you want to do, if you want to go on the internet. Well, can I, can I please go on the internet for my job and can I contact my grandkids on the internet? That, that's, what you're arguing is very impractical, isn't it? Your Honor, it is to a certain extent, but I, I think that's within the district court's power to decide. But didn't we say in Duke that it mattered? Yes, Your Honor, you did say in Duke that it mattered. And I understand that that gives a defendant easier and quicker access, but it doesn't cut off access. If you don't give it to the probation officer, it doesn't cut off access. I mean, really, there can be a situation and possibly that was the situation in this case where the court originally imposed that. And really what's happened here is that effectively the defendant's coming in and saying, I want you to, hey, I violated supervised release, Your Honor, and I want you to modify this, this condition or, or not impose it. And so, and, and the judge has somebody that's violated after a year and a half. He also has some other factors that he's considering, including the fact when this defendant was associating with minor children that were relatives of his, did he abuse them? We have no evidence of that. But he defied the court when he's arrested for a supervised release violation. And then if you look at this defendant's behavior, the, the probation officer went to the court prior to this to get authority to search his apartment because she believed that, that something was going on. He put, and this is in the detention hearing, he put a lock on the gate so when the probation officer came, she couldn't surprise him. So he had time to hide things. So he's engaged in this kind of behavior. When he was arrested originally for the, for the child pornography offenses, he goes, well, what's your definition of child pornography? He says, I don't think this is child pornography. And he's very evasive. And he never, even if you read the PSR, he never really took responsibility for possessing child pornography. He's, he is a person who, if he met a person he was going to date, I don't think the court trusted this man to tell the person, oh, by the way, I have a conviction for child pornography. Oh, by the way, I'm not supposed to be around children. I don't think the district court trusted this man because of his- Because this was reasonably related for a particular reason that is required. Do you concede that that did not occur? It did not occur, but I would say this is procedurally very different in a way because this is a revocation. And what he did is he said, well, how many years has he served on supervised release? And the probation officer said a year and a half. He said, well, I'm going to sentence him to 90 days in jail and he's going to, he's going to serve the rest of his term. So he sentenced him to eight years of supervised release, which was roughly the term. So he said, and I'm going to reimpose the same conditions. And I think it would be onerous for the district court who had sentenced him before and imposed those conditions of supervised release to have to go through all that and repeat it again. Whether he did it at the initial hearing, I don't know. That's not part of the record. But I don't think the district court should have to go back and say, well, I again, you know, am going to repeat my reasons for imposing this condition. Because there are all these requirements for what you have to do in these hearings. They have tons of onerous requirements. Why is that any more onerous than the rest of the things they have to do? Your Honor, I think it's because they've already said it. And that those reasons are based on past behavior. And that then you have someone that's done something else, which is they violated. And so.  Your Honor, the objection that was made was made to the First Amendment and the right of association. And then there was an objection that it was not narrowly tailored. But there was no objection that was really based on this isn't related to this crime or it doesn't fit this defendant. What about blanket? It's a blanket prohibition when he said that. Well, he did say that. Why isn't that preserved? It's a blanket prohibition and it's not narrowly tailored. Well, and I think he I think he I think he preserved the issue of is it narrowly tailored? But I think what he didn't do is say, Your Honor, well, what are the reasons why? Or there is no good reason, Your Honor, to impose this condition at all. I mean, he didn't say this man is a saint or this man doesn't have a problem or or, you know, he didn't do any of that. Get into the subject. So it's your position that the First Amendment is preserved, but the other is not preserved. Is that your position? Well, to the extent that that you're also talking about narrowly tailored, he clearly said that in his objection, that it could be more narrowly tailored. But the district court basically said is under all the circumstances, here we are a year and a half later, you're back up here. I'm just not inclined to cut you any slack from the deal you had, period. Yes, Your Honor. That's exactly right. Yeah. If we strike the condition on the on the First Amendment ground, we don't even have to address the standard of review or the merits of the statutory issue, do we? No, Your Honor. I don't think so. If it if it violates the First Amendment, can you address whether it violates the First Amendment? Well, Your Honor, there have been a number of cases, and I think I did cite one in my And convicted offenders lose lots of rights. And he's on supervised release. So he's not entitled to all of the rights and privileges that we all are as free citizens. It's different. And these days people don't want to hear that certain people don't have rights, but that is what the law is, that you give up certain rights when you're convicted. I mean for example . . . Do you know that a restriction such as this would be upheld under the First Amendment? I don't know if I have one that's that specific, but certainly there are cases that say for someone that's a child offender, associating with minors or being prohibited from that kind of association is constitutional. And I would be happy to follow supplemental, but I do believe there's a case in my brief. I just don't have it right now, and I don't know if that's specific enough. What is the government's understanding of the treatment of conditions like this in the other circuits? I think there's a Ninth Circuit case out there. I don't know that . . . It struck down the condition, didn't it? Yes, it did. Is that the only case that you're aware of? That's the only case that I'm aware of now. I think that included prohibiting him from dating his fiancee. I think there was a fiancee, so I think the facts of that are different. That was out of the Ninth Circuit, I think. But I think the whole freedom of association, really those rights are lost once you're convicted of certain offenses. And yes, it should be reasonably related to the offense, but in this case it really is. You're really . . . You know, in Paul, I think the defendant talked about, or there was some quoting the defendant who said he went to AA meetings and he went to shelters or something to find dysfunctional people so that he could meet their children. I just . . . You know, the risk of harm to a child outweighs the liberty interest of this defendant. But we've seen in other cases where they put on . . . the government actually puts on an expert that says there's a link between viewing the pornography, and then the defense puts on an expert and says, no, there's really not a link, and in fact, they've shown that that was a re-imposition. And because this is a sentence on revocation of supervised release, and so he's re-imposing the same thing. You know, if you remanded and told the court to just look at one particular issue, they wouldn't re-litigate everything. And I think that was probably what was going through the district court's mind, is I've already done this. He's asking me to change it, and I'm sticking with what I have. You said, well, we're protecting children, this protects children. There's not any authority that that protects children, is there, in this record? I think . . . Other than your common sense kind of idea that the more you do can protect children. Yes, Your Honor. I think this is a common sense kind of condition, and especially if you read that statement in Paul, you understand that people take advantage of special relationships. I think that's why we see so much abuse between relatives. Right, but this could have all been put on the record before the district court, couldn't it have been? It could have been, Your Honor, but I don't know if that was required. I can't concede that, because I just don't believe that the district court's required to do it again. Any other questions? Thank you, Ms. Lockwood. Thank you. I'm going to make sure you save time for a bow. Judge Elrod, you had asked me about other circuit authority, and I failed to identify Wolfchild. That was the Ninth Circuit case mentioned by the government as well, and in that case, they actually talked about Ellis, and distinguished Ellis, which approved, this court approved, a ban on dating. And what they noted, is what we've noted as well, is that in Ellis, again, Ellis had gone about using his close family relationships to be able to gain access to nephews, for example, to sexually assault them. So you do have another circuit out there that's discussed a more similar context to Caraveo, which is an individual that has no history of using the relationships to gain access for sexual abuse of minors. What you're arguing for in a revocation of supervised release, what is being punished is a violation of the court's trust. It's not the first offense, it's not ever the new offense, it's a violation of the court's trust. That's the whole theory that underlies revocation of supervised release. So your client wants us to say that the district judge was wrong in saying in a situation a year and a half after this whole sentence was imposed, and we have a violation, that he's not interested in a breach of trust situation, that he is not interested in revisiting that, and that we should say that he erred. I don't see that. Okay. Well, and I think what the court has heard from the government on that point is that the quote was, we don't think the district court trusted him. Well, I can understand that, and what's at issue is a violation of the court's trust. That is exactly what supervised release focuses on. Well, the supervised release in this case, with all due respect, Your Honor, was a violation of a specified term of supervised release. He was violated for having, he picked up another charge when probation showed up on a visitor's house. He was bombarded with 30 law enforcement officials at 6 in the morning on Saturday. They dragged him out, and he gave the name James Albert Caraveo, supposedly in a jail. He pled guilty to that. It was a misdemeanor. That was the violation, which I would hardly say is violating the court's trust in terms of the sense of he went out and committed an act. He had all of this brought into his house, and the only violation that was found in this case was the misusing of the middle name, Your Honor, in terms of that. More importantly, as a matter of legal issue, is that I haven't seen case law that says a term of supervised release can be based on the court's trust. What it is, is it relates back to 3553 and 3583, which is they have to be reasonably related, and they have to be narrowly tailored, and it can't be a greater deprivation of liberty interest than necessary. That is the statutory framework, and as the court said in Duke, when it relates to association restrictions, very mindful and careful to make sure to weigh and balance that. As far as the government and the point the court's making about in a revocation hearing, and I think Judge Elrod said it exactly correct, which is that it could become onerous at a revocation hearing to have the court recite and go through the supervised release conditions. We're going to go back to square one, and we're going to look at every one of these and re-examine them, and we're going to start over again a year and a half later. In this case, I did exactly the opposite of that, but my time ran out, if I may finish. You can finish your answer. Thank you. Which is I raised one specific condition that was being objected to, in fact, conceded and acknowledged in that objection of other conditions that were more narrowly tailored. All right. Thank you. Your case is under submission, and the court will take a brief recess before hearing the final two cases.